IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

DORIS RUSSELL o/b/o J.P.                                             PLAINTIFF

      v.                              CIVIL NO. 12-6083

CAROLYN W. COLVIN,[1] Commissioner
Social Security Administration                                       DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Doris Russell, brings this action on behalf of her minor granddaughter, J.P., seeking judicial review, pursuant to 42 U.S.C. § 405(g), of a decision of the Commissioner of the Social Security Administration (Commissioner) denying J.P.'s application for child's supplemental security income (SSI) benefits under Title XVI of the Social Security Act (Act).

**I.   Procedural Background:**

Plaintiff protectively filed the application for SSI on J.P.'s behalf on February 15, 2006, alleging that J.P. is disabled due to a hip bone growth problem. (Tr. 58). An administrative hearing was held on April 2, 2008, at which J.P. and Plaintiff appeared with counsel and testified. (Tr. 259-272).

The ALJ, in a written decision dated August 24, 2008, found that J.P. was not disabled, as J.P. did not have an impairment that met or was medically or functionally equal to a listed impairment. (Tr. 13-23).

---

[1] Carolyn W. Colvin, has been appointed to serve as acting Commissioner of Social Security, and is substituted as Defendant, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

Plaintiff then requested a review of the hearing decision by the Appeals Council, which after reviewing additional evidence, denied that request on December 9, 2008. (Tr. 4-7). Plaintiff appealed this decision in federal district court.

In a decision dated January 15, 2010, the Court remanded Plaintiff's case back to the Commissioner. (Tr. 310-316). The Appeals Council vacated the ALJ's decision, and remanded Plaintiff's case back to the ALJ on February 16, 2010. (Tr. 307-309).

On June 16, 2010, a supplemental hearing before the ALJ was held, at which Plaintiff appeared with counsel and testified. (Tr. 355-378)

The ALJ, in a written decision dated October 6, 2010, found that J.P. was not disabled, as J.P. did not have an impairment that met or was medically or functionally equal to a listed impairment. (Tr. 283-301).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which after reviewing additional evidence, denied that request on May 31, 2012. (Tr. 273-275). Subsequently, Plaintiff filed this action. (Doc. 1). Both parties have filed appeal briefs and this case is before the undersigned pursuant to the consent of the parties. (Docs. 5, 8, 9).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.     Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be

affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

The regulations prescribe a three-step process for making the disability determination. First, the ALJ must determine whether the child has engaged in substantial gainful activity. See 20 C.F.R. 416.924(b). Second, the ALJ must determine whether the child has a severe impairment or combination of impairments. See 20 C.F.R. 416.924(c). Third, the ALJ must determine whether the severe impairment(s) meets, medically equals, or functionally equals a listed impairment. See 20 C.F.R. § 416.924(d). Functional equivalence may be established by demonstrating marked limitations in two, or extreme limitations[2] in one of the following

---

[2]((2)Marked limitation -(I)We will find that you have a "marked" limitation in a domain when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean....
(3)Extreme limitation - (I) We will find that you have an "extreme" limitation in a domain when your impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be very seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Extreme" limitation also means a limitation that is "more than marked." "Extreme" limitation is the rating we give to the worst limitations. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean.

20 C.F.R. § § 416.926a(e)(2) and (3).

"domains:" 1) acquiring and using information; 2) attending and completing tasks; 3) interacting and relating with others; 4) moving about and manipulating objects; 5) caring for yourself; and 6) health and physical well-being. See 20 C.F.R. §§ 416.926(b)(1), 416.926a(d). The ALJ should consider all relevant evidence in the case to determine whether a child is disabled, and the evidence may come from acceptable medical sources and from a wide variety of "other sources," including teachers. SSR 09-2P. In fact, the Commissioner's regulations for childhood disabilities "provide that parents and teachers, as well as medical providers, are important sources of information." Lawson v. Astrue, 2009 WL 2143754, at *9 (E.D. Mo. July 13, 2009), citing 20 C.F.R. § 416.9249.

### III.   Discussion:

Plaintiff argues the following issues on appeal: 1) the ALJ failed to follow this Court's remand instructions; 2) the ALJ erred in finding that the new evidence did not show a deterioration in J.P.'s overall functioning; and 3) the ALJ erred in finding that J.P.'s impairments did not satisfy functional equivalence in the broad areas of development.

####   A.   Failed to Follow Remand Instructions:

After reviewing the evidence of record, particularly the June 16, 2010 supplemental hearing transcript, the Court finds that in this case the ALJ did not fail to follow the Court's remand directives. The supplemental hearing transcript revealed that the ALJ and Plaintiff's counsel discussed the Court's directives at the beginning of the hearing. (Tr. 357-361). At the end of the supplemental hearing, the ALJ again discussed the Court's order:

> ALJ:   All right. Well I assume the records that Mr. Pullen is going to get for us will clear that up. Mr. Pullen is going to get for us the

|       |                                                                                                                                                                                                                                                                                                                           |
|-------|---------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|       | hospital records or at least the admission history and the discharge summary from the June 10, 2010, surgery…The report cards from the '09-'10 school year anything else from the school that you can get that you believe is relevant and as I understand it Mr. Pullen it's your position and belief that these records will eliminate the need for any interrogatories to any treatment sources.  Is that correct? |
| ATTY: | The records are complete as what they appear to be, Your Honor and I think that will answer all of our questions at that point and time and it not - |
| ALJ:  | Let me know what interrogatories you want because I don't know what to ask. |
| ATTY: | Yes sir.  If it's as complete as the others that probably should answer all our questions. |
| ALJ:  | Okay just let me know what your position is and we'll go from there… |

(Tr. 377-378). At the beginning of the supplemental hearing, Plaintiff's counsel stated that he did not know if specific interrogatories would make a "great deal of difference" in this case. (Tr. 359). As addressed above, the ALJ stated he would obtain additional interrogatories upon Plaintiff's counsel's specific request. Plaintiff's counsel made no such request. Plaintiff's counsel cannot now argue that the ALJ should have obtained updated interrogatories, when Plaintiff's counsel failed to request the information. Furthermore, after reviewing the current record before the Court, the ALJ's failure to obtain updated interrogatories does not constitute reversible error in this particular case.

### B.     J.P.'s Overall Functioning and Functional Equivalence:

In the present case, the ALJ found that J.P's claim failed at step three, as J.P. did not have an impairment that met or medically or functionally equaled a listed impairment. After reviewing the entire record, the Court finds there is substantial evidence to support the ALJ's determination that J.P.'s impairments do not meet or medically equal in severity any listed impairment. See 20 C.F.R. Part 404, Subpt. P, App. 1, Part B.

The Court will next address whether J.P.'s impairments are functionally equal to any listed impairment, or, in other words, whether "what [J.P.] cannot do because of [her] impairments . . . is functionally equivalent in severity to any listed impairment that includes disabling functional limitations in its criteria." 20 C.F.R. § 416.926a(a). The ALJ determined that the facts in this case suggest J.P. had no significant limitation in the areas of interacting and relating with others, caring for oneself, and health and physical well-being; and "less than marked" limitation in the areas of acquiring and using information, attending and completing tasks, and moving about and manipulating objects.

We will now address each of the ALJ's domain determinations. With regard to acquiring and using information, the ALJ found J.P. had "less than marked limitations." In making this determination, the ALJ noted that testing indicated J.P.'s Full Scale IQ was a 92. The ALJ also noted that J.P.'s teacher indicated, in July of 2010, that J.P. had only "a slight problem" in this area of functioning. The ALJ also noted that J.P.'s teacher indicated that J.P. often needed assistance due to J.P.'s "lack of effort." Based on the entire evidence of record, the Court finds

AO72A
(Rev. 8/82)

substantial evidence supporting the ALJ's determination that J.P. had "less than marked" limitations in this area of functioning.

With regard to attending and completing tasks, the ALJ found J.P. had "less than marked limitations." In making this determination, the ALJ noted that while J.P.'s teacher indicated that J.P. had a very serious problem with completing her homework timely, the teacher also noted that J.P. was inconsistent in her effort to complete her class and home work. The ALJ also pointed out that in July of 2009, Plaintiff reported to J.P.'s treating physician that J.P. had not been doing what she was supposed to do and had become "lazy." The record also revealed that J.P. intended to start playing a musical instrument during the upcoming school year. Based on the entire evidence of record, the Court finds substantial evidence supporting the ALJ's determination that J.P. had "less than marked" limitations in this area of functioning.

With regard to interacting and relating with others, the ALJ found J.P. had no limitations. A review of the record revealed that J.P.'s teacher also indicated that, with the exception of having a slight problem with expressing anger appropriately within her peer group, J.P. had no problems in this area of functioning. Based on the entire evidence of record, the Court finds substantial evidence supporting the ALJ's determination that J.P. had no limitations in this area of functioning.

With regard to moving about and manipulating objects, the ALJ found J.P. had "less than marked limitations." In making this determination, the ALJ noted J.P. had undergone surgeries to place and then remove hardware in her right hip during the relevant time period, and then to replace hardware as a result of a fracture of the hip after a fall in September of 2010. In

December of 2010, the homebound teacher noted that J.P. had become much more independent, and that J.P. was able to move around the home and to get what she needed without assistance.

It is also noteworthy that in June of 2010, Dr. Kevin Rudder, J.P.'s treating physician, noted that J.P.'s mother had asked for pain medication during this visit, and that J.P. had reported to him that she was not taking pain medication. In August of 2010, Dr. Rudder noted that he would not prescribe narcotic pain medication for J.P. because there had been problems with J.P.'s family members taking this medication in the past. Based on the entire evidence of record, the Court finds substantial evidence supporting the ALJ's determination that J.P. had "less than marked" limitations in this area of functioning.

With regard to caring for oneself, the ALJ determined J.P. had no limitations. The record revealed that J.P.'s teacher indicated that J.P. did not ask for assistance frequently and that J.P. tried to work independently. In December of 2010, J.P. was noted as being able to move around her home without assistance. Based on the entire evidence of record, the Court finds substantial evidence supporting the ALJ's determination that J.P. had no limitations in this area of functioning.

With regard to health and physical well-being, the ALJ determined J.P. had no limitations. Based on the entire evidence of record, the Court finds substantial evidence supporting the ALJ's determination that J.P. had no limitations in this area of functioning.

Based on the foregoing, the Court finds substantial evidence to support the ALJ's determination that J.P.'s impairments are not functionally equal to any listed impairment.

### IV. Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying J.P. benefits, and thus the decision should be affirmed. The undersigned further finds that Plaintiff's Complaint should be dismissed with prejudice.

DATED this 24th day of July, 2013.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

AO72A (Rev. 8/82)